[Civ. No. 19177. First Dist., Div. One. Apr. 24, 1961.]

FRANCES W. COOKE et al., Appellants, v. ROBERT PRESTRIDGE STEVENS et al., Respondents.

David Henry Gill and Theodore G. Morris for Appellants.

Hoge, Fenton, Jones & Appel and Charles H. Page for Respondents.

DUNIWAY, J.—In an action for wrongful death plaintiffs appeal from a judgment for defendant Stevens entered upon a jury verdict, and for defendant Crown Zellerbach Corporation entered following the granting of a nonsuit. They also purport to appeal from the verdict and from the order denying their motion for a new trial, neither of which is appealable.

The errors assigned are that the court erroneously instructed the jury upon assumption of risk, and that the court should not have granted the nonsuit. The only basis for asserting liability against Crown Zellerbach Corporation is the rule of *respondeat superior*. Since we find that the court properly instructed the jury, so that the judgment in favor of Stevens must be affirmed, it is unnecessary to consider the propriety of the nonsuit. Crown Zellerbach Corporation cannot be liable if Stevens is not.

The plaintiffs' decedent was a guest in Stevens' car. Their complaint charged both wilful misconduct and intoxication. (Veh. Code, § 17158, former § 403.) On the matter of assumption of risk, the court instructed the jury as follows: "If you should find that immediately preceding the accident involved in this case the defendant Robert Prestridge Stevens was intoxicated and that his intoxication was a proximate cause of injury to the plaintiffs, the plaintiffs will be entitled to your

verdict for damages and compensation for the injury—the death, in this case—thus caused on that particular cause of action unless you further find by preponderance of evidence that the decedent assumed the risk involved with such intoxication. I will later define assumption of risk. . . .

"Now a definition of assumption of risk. When upon entering a vehicle to accept a ride as a guest a person knows that one who is to operate the vehicle is intoxicated, the law holds that he assumes the hazards of his undertaking and therefore may not recover in the event of injury resulting from the driver's intoxication. The same effect under the law also follows when after having entered a vehicle a guest learns that the driver is intoxicated and the guest having a reasonable opportunity to alight fails to do so, thus voluntarily accepting the risk incident to the driver's intoxication.

"You will note that the definition of this defense is restricted to that cause of action which claims a right of recovery by reason of intoxication. It has no application to the other cause of action which claims a right of recovery by reason of wilful misconduct."

After the case was submitted to them, the jury returned to the court room and asked for a rereading of "just certain parts of it, that part referring to the elements of intoxication and assumption of risk." The court then reread his definition of intoxication, the correctness of which is not attacked, and the second instruction quoted above, but not the third.

It is not claimed the instructions are erroneous. Rather, the contentions are (1) that the evidence did not justify giving the instructions at all, (2) that there was no evidence that decedent had a reasonable opportunity to alight, and (3) that because defense counsel argued, over objection, that assumption of risk applied to both the wilful misconduct count and the intoxication count, the jury was prejudicially confused when, at the time that it asked for a rereading of the instruction, the court failed to read the third paragraph quoted above.

In considering the first contention, certain fundamental principles must be borne in mind. ██ First, "[A] party has a *right* to instructions on his theory of the case, if it is reasonable and finds support in the pleadings and evidence or any inference which may be properly drawn from the evidence." (2 Witkin, California Procedure, Trial, § 52, subd. (a), p. 1780.) This rule is so well established as to require no further citation of authority. Here the defense was pleaded.

■ Second, when it is claimed that there is no evidence justifying the instruction attacked, the court must approach the question in the same manner as it does in considering a claim that the evidence is insufficient to justify the verdict. This means that if there is any substantial evidence, contradicted or not, to justify the instruction, it was proper to give it. See, for example, *De Stackelberg* v. *Lamb Transp. Co.*, 168 Cal.App.2d 174, 179 [335 P.2d 522]. This rule, too, is so well established as not to require further citation of authority.

■ Third, before it can find assumption of risk, the jury must find that plaintiff (decedent here) *knew* that the driver was intoxicated. It is not enough that, in the exercise of due care, he should have known. (*Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 162 [265 P.2d 904].) Here, the jury was correctly instructed: "When . . . a person knows . . ."

■ Fourth, the evidence need not compel a conclusion, as a matter of law, that defendant knew. Knowledge, like any other fact, may be inferred from proven facts; indeed, unless a party admits knowledge, in the nature of the case there can be no other way to prove it. (*De Stackelberg* v. *Lamb Tranps. Co., supra,* 168 Cal.App.2d 174, 179, and cases there cited.)

■ We now turn to the evidence. Stevens attended a tax conference in Carmel. The last event was a cocktail party and dinner in that city on the evening of July 12, 1957. At the party he had two drinks of bourbon and water, in the course of half an hour. With dinner, he had a glass of wine. He left at about 10 p.m., and accompanied by a friend drove in his car to Cerrito's Restaurant in Monterey. During a visit of about an hour, he had two more bourbon and water highballs. They then went next door, to the Blue Ox, where he had another such highball. After about an hour, they proceeded to Biff's, at Seaside, where they went to the bar. He had three more bourbon and water highballs. Thus, during the course of the evening Stevens had had at least eight highballs and a glass of wine. Because his evening was one of "bar hopping," because the foregoing list of drinks was extracted from him by cross-examination under Code of Civil Procedure, section 2055, and because he was partially impeached on the question of the number of drinks he had had, the jury could infer that he had more drinks than he would admit having. At Biff's he first sat at the "piano bar," then

at the main bar where decedent was sitting beside him. They were introduced by the bartender and chatted for 15 minutes. It is inferable that they sat side by side before that, while Stevens talked to the bartender, and that Stevens was at Biff's for a total of about an hour.

Decedent manifested an interest in Stevens' Thunderbird car, and the two of them went outside "to view" it. Having done so, they got in, and Stevens drove down Fremont Street into Seaside, made a U-turn, and returned to a point near Biff's. There Stevens "paused" to let a car go by, contemplating making a left turn into Biff's. Instead, he proceeded along the divided highway going to Fort Ord. The accident occurred shortly afterwards. There was evidence that Stevens was traveling as much as 100 miles per hour.

A police officer testified that, at the time of the accident there was an odor of alcohol, and that two hours later, at the hospital Stevens was "under the influence."

We think that the jury could infer that Stevens was drunk when he talked to decedent before the ride began, and that decedent knew it. We do not mean that such inferences are compelled by the evidence; if they were, the case should not have gone to the jury at all. All that is required is that the evidence permit an inference that when decedent accepted the ride he knew that Stevens was drunk. The instruction was properly given.

The cases on which appellants rely are not to the contrary. In *Lindemann* v. *San Joaquin Cotton Oil Co.*, 5 Cal.2d 480 [55 P.2d 870], the court affirmed a judgment for the plaintiff who was the guest of an intoxicated driver. It refused to hold, as a matter of law, that plaintiff knew that the driver was intoxicated, affirming the implied finding of the jury that he did not, the evidence being conflicting. *McMahon* v. *Schindler*, 38 Cal.App.2d 642 [102 P.2d 378], is similar. *Tomlinson* v. *Kiramidjian*, 133 Cal.App. 418 [24 P.2d 559], reversed a judgment notwithstanding the verdict, in favor of defendant, on the ground that the question was one of fact not one of law. These cases support the action of the court below in submitting the question to the jury. *Lindemann* is a leading case standing for the propositions that ordinarily the questions as to whether defendant was intoxicated, and if so, whether plaintiff knew it, are for the jury.

In *Enos* v. *Montoya*, 158 Cal.App.2d 394 [322 P.2d 472], it was held not error to instruct upon assumption of risk; the only refused instruction dealt with contributory negli-

gence, and the only evidence of defendant's intoxication was that he had had several beers during the day and at a beach party, and the accident occurred after 11 p.m. At the party he sang louder than usual, giggled a lot and made affectionate advances to a young lady. The court held that there was no evidence that he was obviously intoxicated, or that plaintiff knew or should have known that he was. The time involved and the nature and quantity of liquor consumed are so different from our case as to make the Enos case not controlling here. *Kroplin* v. *Huston*, 79 Cal.App.2d 332 [179 P.2d 575], also deals with contributory negligence, as to which no instruction was given in our case, and there was no evidence from which it could be inferred that plaintiff, before getting into the car, knew that defendant was drunk. Moreover, the instruction requested in that case was also objectionable for other reasons. (79 Cal.App.2d, at pp. 342-343.) *Harlow* v. *Van Dusen*, 137 Cal.App.2d 547 [290 P.2d 911], is also very different in its facts. There was evidence that the driver and his two guests had had some drinks, but none that any of them was intoxicated, and the case was based upon wilful misconduct only, to which the instructions given in our case were not applicable. The facts in *Eramdjian* v. *Interstate Bakery Corp.*, 153 Cal.App.2d 590 [315 P.2d 19], are not remotely comparable to those of the present case. In that case the court quite properly held that a person who is lying unconscious in the middle of a highway, as a result of one accident, does not assume the risk of being run over in another.

■ The second contention, that decedent had no opportunity to alight, so that the portion of the instruction dealing with such opportunity is prejudicially erroneous, is belied by the record. Stevens paused considering making a left turn, before proceeding on the divided highway, thus affording such opportunity. We do not say that decedent had such opportunity as a matter of law; only that the jury could so find.

■ The third contention, that the jury was prejudicially confused, is likewise not sustainable. The request made by the jury for the rereading of "that part referring to the elements of intoxication and assumption of risk" shows clearly that the jury was anything but confused. Counsel's contention is based upon the argument to the jury by respondent's counsel, but the argument has not been brought before us as part of the record. There is a brief affidavit on the subject in support of the motion for a new trial, but it is conclusionary, and, we think, insufficient to show prejudicial error.

Evidently the trial judge was not impressed; he heard the arguments and he denied the motion for a new trial. It was after argument by counsel that the court instructed the jury that the defense of assumption of risk applied solely to the cause of action based upon intoxication, and it is apparent that the jury fully understood that instruction.

The purported appeals from the verdict and the order denying a new trial are dismissed. The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied May 19, 1961, and appellants' petition for a hearing by the Supreme Court was denied June 21, 1961.