[Civ. No. 24892.   Second Dist., Div. One.   Aug. 1, 1961.]

KATHRYN MAU, Appellant, v. HOLLYWOOD COM-
MERCIAL BUILDINGS, INC. (a Corporation), Re-
spondent.

Henry C. Clausen and Clausen & St. Clair for Appellant.

Irsfeld, Irsfeld & Younger and Robert S. Forsyth for Re-
spondent.

FOURT, J.—This is an appeal from the judgment entered upon a jury verdict in respondent's favor after a trial upon appellant's amended complaint for damages based upon six causes of action. The litigation arose primarily out of the landlord-tenant relationship between appellant lessor and respondent lessee.

A résumé of the situation is as follows:

On February 6, 1958, appellant (plaintiff) served a "THREE DAYS' NOTICE" to quit upon respondent tenant. On July 1, 1958, appellant filed her "COMPLAINT FOR UNLAWFUL DETAINER" alleging three causes of action.

The first cause of action alleged that respondent committed waste and breached the covenant against waste as contained in the form of lease incorporated in the complaint as "Exhibit A"; the second cause of action alleged a breach of a covenant to pay any increase in property taxes; and the third cause of action alleged a breach of the obligation to pay the agreed rent from August 1, 1953, the occasion when the lease was extended for an additional five-year period.

The material portions of said Exhibit "A" which was dated July 31, 1948 (admitted into evidence as plaintiff's "Exhibit 10" and hereafter referred to as "Exhibit 10") are as follows:

1. The premises were a one-story dwelling house, and two-car garage building, together with the entire use of the grounds at 601 North Wilcox Avenue and 595 North Wilcox Avenue, Los Angeles, California. (Appellant was named as Lessor and Black-Foxe Military Institute was named Lessee.)

2. The term was for five years commencing August 1, 1948, and the lease could be extended for five additional years upon 30 days' written notice by lessee.

3. The monthly rent was $333.34, with receipt of first and last months' rents acknowledged.

4. The pertinent covenants in handwriting were as follows:

a. "Exterior of 601 N. Wilcox Ave. buildings to be redecorated within 'each' 5 years from date at expense of lessee. [Note: The word "each" was inserted but not initialled.] Same to apply to 595 N. Wilcox Avenue.

b. "Interior of each building to be re-decorated also within 5 years, 'best materials to be used.' [Note: The words "best materials to be used" are inserted and are initialled by both signatories.]

c. "If taxes increase at end of first five years period lessee will pay the differential if lease is extended.

d. "Any property tax increase to be paid by lessee." [Note: This clause is initialled by both signatories.]

5. The pertinent portions in typewriting or printing provided that:

a. ". . . Lessee may cancel this lease at any time during the five years' period by paying rental accrued to said date, together with a bonus of one month's unearned rental.

b. "It is understood that the premises herein demised are to be used for school purposes and that in case such use of the property is prohibited by any municipal, state, or federal authority, this lease may be cancelled without penalty at the option of the Lessee."

c. Lessee shall "pay therefor unto the said Lessor, the monthly rent or sum of Three Hundred Thirty-Three 34/100 Dollars in lawful money of the United States, monthly in advance, . . .

d. ". . . Lessee will well and truly pay or cause to be paid monthly in advance, in lawful money, the said reserved rents when due or payable, and in manner hereinbefore stated; that in the event of the said monthly rent or any part thereof remaining unpaid for the space of three days after the same shall have become due or payable, . . . , Lessee will . . . surrender and deliver up possession . . .

e. ". . . Lessee will carefully and economically occupy and use said House . . . , and forthwith repair all injury, and pay all damages in like lawful money, that may happen or accrue to the same or any part thereof, during the term of this lease; . . .

f. ". . . Lessee shall not make any repairs or alterations to the premises herein demised, without the written consent of said Lessor, and then only after said consent is granted. Said alterations and repairs to be made at the cost and expense of said Lessee, to become the property of the Lessor, at the termination of the lease. . . .

g. ". . . [A]t the expiration of the term of this lease or agreement, or other sooner determination thereof Lessee will peaceably and quietly surrender, yield and deliver up the entire possession . . . unto said Lessor . . . in as good state and condition (as the same are now in, ordinary wear and tear and damages by fire alone excepted.) . . . [Note: The words "as" and "as the same are now in, ordinary wear and tear

and damages by fire alone excepted'' have a line drawn through them. The line is not initialled.]

h. ''The Lessee agrees . . . to care for the lawn and garden.

i. ''. . . Lessor shall 'Reserves store-room' have the privilege of storing certain articles in one space, such storage, however, shall not interfere with the use of the garage for automobile purposes.'' (Note: The words ''Reserves store-room'' are inserted but not initialled.)

The lease is signed by appellant and the Black-Foxe Military Institute (i.e., Miles Sanford).

The duplicate lease retained by Black-Foxe (defendant's Exhibit ''A'') differs from appellant's copy of the lease[1] (plaintiff's Exhibit ''10'') in the following respects:

1. Defendant's (respondent's) Exhibit ''A'' did not contain the word ''each'' between the words ''within'' and ''five years.'' (See 4. a., *supra*);

2. In respondent's Exhibit ''A'' the words ''as the same are now in, ordinary wear and tear and damages by fire alone excepted'' are not stricken out. (See 5. g., *supra*);

3. Respondent's Exhibit ''A'' does not contain the words ''Reserves store-room.'' (See 5. i., *supra*.)

The original answer filed on July 15, 1958, by respondent, and other defendants, later dismissed, admitted the execution of the above-described lease, but denied the commission of the acts alleged to be waste, denied any breach of covenant to pay increased taxes, and denied any obligation to pay rent over $300 per month, alleging that the rental had been reduced to $300 per month by letter dated June 22, 1950, between appellant and Black-Foxe Military Institute, and prayed that respondent retain possession up to and including July 31, 1958.

On January 13, 1959, it was stipulated between the parties and ordered by the court that an amended complaint be filed, and that all its allegations be deemed denied.

On the same day the amended complaint was filed, alleging six causes of action, and incorporating the above-described lease.

The first cause of action sounds in waste and breach of the covenant against waste. It is alleged that respondent,

---

[1] It was respondent's position at the trial that the true lease between the parties was defendant's (respondent's) Exhibit ''A'' and not plaintiff's (appellant's) Exhibit ''10'' attached to the complaint.

without appellant's written or oral consent, destroyed six silver-leaf poplar trees, two maple trees, one palm tree, a clump of banana trees, an acacia tree, and a rubber tree; that respondent planted eugenia trees, that respondent destroyed brick steps on the northerly side of the premises, destroyed a stucco fence on the northerly side, destroyed a portion of a cement walk with footprints embedded therein, and destroyed approximately sixteen iron or steel awning standards, and removed numerous valued tropical plants from the patio.

In the second cause of action it is alleged there was a breach of the covenant to pay increased taxes in that respondent failed to pay the increase over and above $370.80, the amount of property tax for the fiscal year 1947-1948.

In the third cause of action it is alleged that the rent was agreed to be reduced from $333.34 per month from June 22, 1950, to July 31, 1953, but that it was agreed that upon the extension of the lease the rent would return to $333.34 per month, and it was alleged that the Lessee refused to pay anything over $300 per month from the time of the extension.

In the fourth cause of action it was alleged that there was a service of the notice to quit and election to declare a forfeiture, and it was further alleged that the reasonable value of use of the premises from the time of the service of the notice to July 31, 1958, was $3,400.

In the fifth cause of action it was alleged that there was a breach of the covenants to redecorate, repair, and to surrender the premises "in good state and condition." The various breaches were set out with detailed particularity.

Finally, in the sixth cause of action it was alleged that there was a conversion of enumerated items of furniture left in respondent's possession.

Pursuant to the pretrial order, an amendment to the first amended complaint was filed and punitive damages were pleaded. These allegations were denied by respondent's answer.

Respondent has expressly adopted appellant's statement of "THE PRE-TRIAL PROCEEDINGS" set forth in appellant's opening brief as follows:

"In their pre-trial statement (C.T. 64) the parties agreed that the above lease was entered into, except that respondent claimed there are differences from the lease actually executed and Exhibit 'A' to the complaint. [I.e., plaintiff's Exhibit

"10."] They agreed that respondent executed the lease and that Miles Sanford, who signed the lease, was at all times the agent of respondent, and was instructed to execute the lease, and that appellant relied on said instructions. It was also agreed that the lease had been extended, and that respondent expressly covenanted not to make any repairs or alterations to the premises without appellant's written consent, and to pay any increase in property taxes, and agreed that respondent paid $806.79 as increased taxes but refused to pay a demanded $788.04 additional. They agreed that by the letter dated June 22, 1950 'future rental' would be at the rate of $300.00 per month, and the lease was extended by letter dated April 30, 1953 for five additional years commencing August 1, 1953, but that after August 1, 1953 appellant demanded rental at the rate of $333.34 and that respondent paid appellant an aggregate sum of $15,300.00 after August 1, 1953, i.e. rent at the rate of $300.00 per month until November, 1957.

"In its pre-trial order the court adopted and approved the above pre-trial statement. (C.T. 61.)

"Appellant's contentions filed for the pre-trial followed the wording of her amended complaint. (C.T. 71-72.)

"Respondent's contentions were:

"(1) That respondent had written and oral consent from appellant to make alterations in and about the premises by reason of a letter of June 22, 1950, and that any acts of waste alleged were done pursuant to this consent.

"(2) That the parties agreed that the tax base for 1948-1949 was the basis upon which any increase in taxes should be based.[2]

"(3) That the letter dated June 22, 1950 reduced the rent to $300.00 per month, and further, that all rental based on $300.00 a month until termination of occupancy had 'been tendered and paid' to appellant.

"(4) That there was no basis for forfeiture, and that the reasonable value of rental was $300.00 per month.

"(5) That any and all items of disrepair of the premises alleged were 'ordinary wear and tear' under the circumstances of its use as a school for boys 4-14 years, and further, that the respondent offered to make certain repairs and paint the premises, but appellant refused to allow respondent to do so.

---

[2]For the base-period of 1947-1948, taxes were $370.80. For the base-period of 1948-1949, taxes were $430.48.

"(6) That the respondent had no knowledge of any of the items of household furniture listed in the conversion count, never had possession thereof, and further contended that all the items listed on the lease were returned to appellant. (C.T. 66.)

"The court held in its pre-trial order that the following were the issues to be decided at the trial. (C.T. 62, 73) :

" '1. Whether defendants altered the premises, destroyed the property, or removed the trees or plants as alleged in Paragraph X of the First Cause of Action. If so, whether such actions constitute waste or a breach of any of the covenants. If so, plaintiff's damage.

" '2. Whether defendants' agreement to pay "any tax increases" required use of the base-period 1947-48 (Taxes were $370.80) or the base-period 1948-49 (taxes were $430.48). The parties agreed that if the 1947-48 period is used, defendants owe $788.04, and that if the 1948-49 period is used, defendants owe nothing.

" '3. Whether rental due under the five-year extension was $333.34 per month or $300.00 per month. The parties agree that if $333.34 is the rate, defendants owe plaintiff $2,811.47 for the period August 1, 1953, to and including February 8, 1958, and that if $300.00 is the rate, defendants owe $680.00 from December 1, 1957, to and including February 8, 1958. Interest at the rate of 7% per annum is claimed on any sums found due.

" '4. Whether the various actions complained of in the first three causes of action or specified in the notice attached to the complaint as "Exhibit B" entitled plaintiff to terminate the lease. If so, whether the notice attached to the complaint as "Exhibit B" was served on defendants in such manner as to effect a termination of the lease. [This issue was removed from the case by the stipulation of respondent that the notice was served.] If so, the reasonable value of the use of the premises from February 9, 1958, to and including July 31, 1958. If the acts complained of did not entitle plaintiff to terminate, the parties are agreed that the issue is whether the rental for the period February 6, 1958, to July 31, 1958, should be at the rate of $333.34 or $300.00 per month as discussed under Issue 3. Defendant paid neither amount. If plaintiff was entitled to terminate and at any time duly served notice thereof, the issue is the rental due from February 6, 1958, to

termination and thereafter the reasonable value of the use of the premises until July 31, 1958.

" '5. Whether the lease required defendants to do the acts and make the repairs specified in Paragraph III [of the fifth cause of action]; whether defendants have failed to do such things. If so, plaintiff's damage. Defendants concede that repairs are necessary. But the parties are in dispute as to the extent of the repairs required and the cost and manner of handling such repairs.

" '6. Whether plaintiff was entitled to and did leave the furniture and furnishings described in the Sixth Cause of Action in the possession of defendants. If so, whether defendants converted the items. If so, plaintiff's damage.'

"To all of the above the pre-trial judge added the following issues. (C.T. 62):

" '7. May extrinsic evidence be received with respect to the subject of (1) taxes and (2) rental, both in connection with interpretation and in connection with the rights of the parties thereunder as evidenced by the facts.

" '8. What effect, if any, is to be given to the acts of the parties and the correspondence between the parties.

" '9. What are the facts with respect to the tenders and what effect, if any, did the tenders have with respect to the rights of the parties, including, but not limited to the right to declare a default, so far as rental is concerned.

" '10. Is the plaintiff entitled to exemplary or punitive damages, and, if so, in what amount, and if so, as to which, if any, of the defendants.' "

Appellant asserts among other things that the trial court erred in refusing to give certain instructions and that she was entitled to a minimum judgment of $2400, representing unpaid rent from November 1957 through July 1958.

▮ Each party is entitled to have his theory or theories of the case submitted to the jury in accordance with the pleadings and proof where there is substantial evidence in the record justifying the giving of the instructions. ▮ The existence or nonexistence of substantial evidence is a question of law. ▮ In ascertaining whether it was error for the trial court to refuse to give appellant's instructions, this court views the evidence in the light most favorable to appellant. (*Sills* v. *Los Angeles Transit Lines*, 40 Cal.2d 630 [255 P.2d 795]; *Dyer* v. *Knue*, 186 Cal.App.2d 348 [8 Cal.Rptr. 753]; *Edgett* v. *Fairchild*, 153 Cal.App.2d 734, 738 [314 P.2d 973].)

Specifically, appellant asserts that the trial court erred in failing to instruct on "What constitutes tender of payment, and the ineffectiveness of tender by check."

Originally, the monthly amount of rent on the subject property was set at $333.34. Early in 1950 the city authorities sent notice that certain corrections had to be made on the premises in order to secure a permit to operate them as a school.

A letter dated May 24, 1950, was sent by respondent to Mrs. Mau. The notice from the city was therein enclosed. This letter recited that as a result of the demands of the city, respondent would be forced to terminate the lease.

According to appellant's evidence, following receipt of the May 24 letter, appellant, and Mr. Dietz, respondent's comptroller, had a conversation whereby it was agreed that appellant and respondent would split the costs of making the changes required by the city, and that the monthly rent should be reduced to $300 per month to cover appellant's share.

Following the conversation, appellant received a letter dated June 22, 1950, from the respondent. This letter provided in pertinent part as follows:

"Reference is hereby made to our letter to you under date of May 24th, 1950, and to our lease with you dated July 30th, 1948, covering your property at 595-601 Wilcox Avenue, Los Angeles, California.

"In consideration of the varied requirements which must be met before we (or any other school) may again operate a school on your property, we make the following proposal:

"We agree, at our expense, to make whatever changes or additions are required in order to secure from the Los Angeles city authorities a 'Certificate of Occupancy' which will allow us to resume occupancy of the property, provided a reduction of rental to $300.00 per month is agreed to by you.

"Your signature in the space provided below will indicate your acceptance of this proposal.

Appellant subscribed the following language in the letter of June 22, 1950:

"I hereby acknowledge receipt of a check for $600.00 covering rental for the month of July 1950, and deposit of the last month's rent in accordance with the above described lease which is hereby reinstated in accordance with all terms therein excepting that future rental shall be at the rate of $300.00 per month. . . ."

By letter dated April 30, 1953, appellant was notified that respondent elected to extend the lease for an additional five years. This letter provided as follows:

"In accordance with the provisions in our five year lease . . . said lease dated July 30th, 1948, and amended June 20, 1950, we hereby notify you of our election to extend the lease in accordance with all its terms for five additional years commencing on the first day of August, 1953. Please acknowledge receipt of this notice by signing the attached copy of this letter where indicated and return it to us in the enclosed stamped envelope."

A paragraph was added to the above letter by appellant. It provided in pertinent part as follows:

"The extension of the above and foregoing described lease is accepted and agreed to upon condition that the rental of the property shall be $333.34 per month, . . ."

By letter of May 11, 1953, respondent stated in part:

"Thank you for your acknowledgment of receipt of our notice of intention to extend our lease with you . . ."

Respondent made no mention therein as to whether they intended to pay rent in the amount of $300 or $333.34 per month. Thereafter, however, from August 1, 1953, appellant continued to receive rent checks in the amount of $300 per month, and upon each she continued to write with her endorsement the words "on account." Commencing November 1, 1957, to and including August, 1958, respondent sent appellant the amount of its version of the rent due (i.e. $300) by way of check with the notation "Rental in full." Immediately after November 1st appellant refused to accept such check and informed respondent thereof. Respondent made no deposit of rent moneys in any bank in appellant's favor nor did it give appellant notice of such deposit.

The statement of the "PRE-TRIAL PROCEEDINGS" set forth above discloses that one of respondent's contentions (i.e. contention number 3) was "That the letter dated June 22, 1950 reduced the rent to $300.00 per month, and further, that all rental based on $300.00 a month until termination of occupancy had *been tendered and paid*' to appellant." (Emphasis added.)

Appellant submitted her "PLAINTIFF'S PROPOSED INSTRUCTION No. 33" which was refused by the trial court. This instruction provided:

"I instruct you that an offer of partial performance of an

obligation to pay money is of no effect as an extinguishment of an obligation. To extinguish an obligation for the payment of money there must not only be an offer of payment but also actual payment or the deposit of the amount due in a bank and Notice of the deposit given to the creditor. The mere tender of a check does not extinguish an obligation for the payment of money.

"Norton v. Lyon Van & Storage Co.

"9 C. A. 2d 199."

The issues to be decided at the trial as set forth in the Pre-Trial Order provide in pertinent part: . . .

"3. . . . The parties agree that if $333.34 is the rate, defendants owe plaintiff $2,811.47 for the period August 1, 1953, to and including February 8, 1958, *and that if $300.00 is the rate, defendants owe $680.00 from December 1, 1957, to and including February 8, 1958.* . . .[Emphasis added.]

"4. . . . If the acts complained of did not entitle plaintiff to terminate, *the parties are agreed that the issue is whether the rental for the period February 6, 1958, to July 31, 1958, should be at the rate of $333.34 or $300.00 per month as discussed under Issue 3. Defendant paid neither amount.* [Emphasis added.] . . .

"9. What are the facts with respect to the tenders and what effect, if any, did the tenders have with respect to the rights of the parties, including, but not limited to the right to declare a default, so far as rental is concerned."

Respondent takes the position that appellant's instruction 33, relating to tender and extinguishing the obligation was not applicable to the issue before the jury; that the issue was whether appellant was entitled to a judgment for rent, and that the jury determined that she was not. As set forth in respondent's brief:

". . . Respondent pointed out in its argument at the motion for a new trial, Respondent was not trying to extinguish an obligation, it was merely trying to pay it. Respondent always recognized an obligation to pay the rent and did everything it could to fulfill the obligation.

"At the Pre-Trial, Respondent readily admitted to the Court that it *owed* Mrs. Mau the rent, but did not stipulate that Mrs. Mau was entitled to a judgment for that amount.

"In argument before the Jury, Respondent again conceded its obligation to Mrs. Mau, and pointed out that all Mrs. Mau

had to do was *cash the checks*. At no time did Respondent contend that it had 'extinguished the obligation.' . . .

"Respondent, at no time agreed to a minimum liability by way of judgment; merely that Mrs. Mau had a certain amount of rent still due to her which would be paid immediately upon the determination of the amount at trial."

Implicit in the verdict in favor of defendant is the jury's determination that the rental agreed upon was $300 per month and not $333.34 as claimed by appellant. There is substantial evidence in the record to support this determination. However, it is clear that appellant was entitled to a judgment in the sum of $2,400.

While respondent takes the position that there was no issue of "extinguishment of the obligation" and that therefore, it was not error for the trial court to refuse appellant's proposed instruction number 33, the fact remains that respondent's obligation to pay the $2,400 rent has not been discharged. The mere giving of a check or checks does not constitute payment. (Hale v. Bohannon, 38 Cal.2d 458 [241 P.2d 4].)

Even if respondent had extinguished its obligation to pay the rent by following the provisions of Civil Code, section 1500,[3] this would not prevent appellant's maintenance of an action and recovery of judgment for rent. (See *Rose* v. *Hecht*, 94 Cal.App.2d 662 [211 P.2d 347]; *Curiac* v. *Abadie*, 25 Cal. 502; 47 Cal.Jur.2d, Tender, § 20, p. 278.)

By virtue of the pretrial order "Tender" was clearly an issue in the case. Appellant was entitled to have the jury instructed thereon.

Where respondent admits, and the evidence indicates that respondent owes appellant for rent, it is fundamental that a judgment in favor of respondent must be reversed. Many of the other contentions of appellant are well taken. However, under the circumstances, it is not necessary to consider the same.

For the reasons stated the judgment is reversed.

Wood, P. J., and Lillie, J., concurred.

---

[3] "[EXTINCTION OF PECUNIARY OBLIGATION.] An obligation for the payment of money is extinguished by a due offer of payment, if the amount is immediately deposited in the name of the creditor, with some bank of deposit within this state, of good repute, and notice thereof is given to the creditor."