[Civ. No. 96. Fifth Dist. Aug. 3, 1962.]

MAURICE JACK VILLINES, Plaintiff and Respondent, v. DAVID W. TOMERLIN et al., Defendants and Appellants.

Edward A. Friend for Defendants and Appellants.

Miles, Sears & Franson and Robert E. Sears for Plaintiff and Respondent.

BROWN, J.—Plaintiff brought this action for damages against the Motel Fresno, a copartnership, and David W. Tomerlin in which he charged that Tomerlin assaulted him on the Motel Fresno premises, and for negligence. Issue was joined and as an affirmative defense, defendants asserted self-defense and defense of property. At the commencement of trial the two causes of action sounding in negligence were dismissed and plaintiff's claim for punitive damages was abandoned. The cause was tried by a jury on plaintiff's theory of assault and battery and defendants' theory of defense of self and property, and plaintiff was awarded $15,000 com-

pensatory damages. Judgment was entered on the verdict and defendants appealed.

Defendants complain (a) of the refusal of certain tendered testimony, and (b) of the action of the court in refusing to submit to the jury an instruction requested by defendant.

The following facts appear from the record:

It is conceded that David W. Tomerlin was one of the partners operating the Motel Fresno and was acting on behalf of the partnership. For convenience, we shall hereinafter refer to Tomerlin as defendant.

Plaintiff had been an intermittent patron of the bar and cocktail lounge operated by the Motel Fresno for at least 18 months. About 5:30 p.m. on August 28, 1959, plaintiff ended his working day and went to the motel, arriving at the bar at approximately 6 p.m. At the time of, or shortly after his arrival, he saw and engaged in a conversation with defendant. Defendant then went home. Plaintiff consumed 10 to 12 drinks containing alcohol and at about 9 p.m. Mr. Schwabenland, the bartender, refused to serve him any further alcoholic beverages. Plaintiff went down two stairsteps to the cocktail lounge to wait for a cab, seated himself, and fell asleep. There is testimony that a cab was called, arrived, and left without plaintiff. About 9:30 p.m. a second cab arrived; the driver entered the cocktail lounge, and the bartender attempted to arouse plaintiff. Defendant, who had just returned, shook plaintiff by the shoulder and awakened him. Plaintiff moved his arms and shoulders and rose rapidly to his feet. Defendant told plaintiff his cab was waiting and he wanted plaintiff to leave the premises. Defendant and plaintiff ascended the stairs to the bar level where plaintiff apologized to defendant and, at plaintiff's insistence, shook hands with defendant three or four times. Defendant again informed plaintiff that he wanted plaintiff to leave the premises. Defendant then turned away, went to the bar, and seated himself. Plaintiff said to the cab driver, "Let's get the hell out of here." He then traversed a corridor paralleling the cocktail lounge at a rapid, swaying walk, slammed a swinging glass door with sufficient force to cause it to hit a stop located outside, then complete a quarter circle inner swing and hit a stop located inside the building, but without damage; then plaintiff continued over and along a 40-foot long breezeway leading to the motel lobby situated in another building, from which breezeway a path led to the parking area and the waiting cab. Defendant, upon hearing the noise made when plaintiff slammed the door,

admittedly became very angry, moved at a fast walk or run to the door and shouted to plaintiff, ''What the hell are you doing to my door?'' Plaintiff, followed by the cab driver, had reached a point about halfway along the breezeway and was almost at the point where he could turn left to go to the waiting cab. He turned or half turned around, faced the glass door and defendant for a short interval, then turned or half turned in the direction in which he had been walking so that he was again facing the lobby at a slight angle. Defendant, who had continued to approach with his right arm extended, then pushed or shoved plaintiff by contacting his right shoulder. Plaintiff fell in what witnesses variously described as a slow motion crumpling, or a sliding, or a twirling motion, and came to rest on his back on the pavement of the breezeway almost at the outer wall of the lobby some 15 feet from the point of contact. Although defendant argues that the contact was a mere ''touching,'' plaintiff landed with such force that three bones of his right ankle, the tibia, the fibula, and the medial malleolus, were fractured. There was testimony that after the fall, plaintiff's ankle was ''popped out of place'' and further testimony that the ankle and leg formed a right angle. Defendant told plaintiff that he should not have shoved plaintiff.

These facts, as briefly outlined above, are not free from conflict. Conflicts and additional facts will be adverted to in our discussion of the points involved on this appeal.

It is not contended that the evidence is insufficient to support the judgment. Therefore, defendant's references, in briefs, to testimony of one of his witnesses that plaintiff kicked the glass door, which weighed in excess of 750 pounds, and thereafter limped, and the testimony of his expert medical witness tending to establish that plaintiff's fractures resulted from his kicking the door, rather than from an act of defendant, may be disregarded. The record is replete with testimony from which the jury could have concluded, as it obviously did, that plaintiff's injuries occurred as a result of defendant's shoving or pushing him and the crucial issue is defense of self and property.

Defendant complains that the trial court erred in excluding defense testimony relating to events which occurred during a visit made by plaintiff to the defendants' establishment on the night before the evening with which we are here concerned. Plaintiff's objections to defense questions propounded to witnesses designed to elicit testimony concerning

plaintiff's prior conduct were sustained and defendant's offer to show that plaintiff's conduct the previous evening was "belligerent to the defendant and to other patrons of defendant and destructive of the good will of the defendant's business property," was rejected. It is claimed that such evidence should have been admitted as relevant to defendant's apprehensive state of mind and as part of the res gestae.

Defendant has referred us to numerous cases decided in other jurisdictions which have provided interesting but unfruitful reading. It would serve no useful purpose to here discuss those cases for the reason that rules governing the nature of evidence deemed admissible and the conditions precedent to admissibility differ materially in the various states.

Concededly, when a defendant relies on the defense of self or property to justify an assault and battery, his state of mind at the time becomes material, and an important factor for consideration in determining justification is his belief in an impending attack, fear of bodily harm, or immediate damage to his property. To show such apprehension, or where evidence of conduct is equivocal, to show who was the aggressor, almost every jurisdiction permits, with some variations, the admissibility of evidence relating either (1) to the general reputation of the party charging assault for violence and turbulence, or (2) to prior specific acts of violence or threats of violence. But limitations, differing with the jurisdictions, have been wisely placed upon the character of evidence deemed admissible and the factual situations permitting admissibility. A common limitation is that, before evidence of general reputation or prior relevant acts of misconduct may be admitted, the party asserting self-defense must offer other evidence as a ground to bring self-defense fairly into issue. (See 2 Wigmore, Evidence (3d ed.) § 246, pp. 44 et seq.; Note 121 A.L.R. 380 et seq.)

■■■ Whatever the rule may be in other jurisdictions, the California rule by which we must be guided appears to be clear that, where one claiming defense of self or property has first established a prima facie case that the assault and battery was in self-defense, he may offer evidence of prior specific acts of violence or prior threats of violence to show that plaintiff is a turbulent and dangerous man and the defendant's knowledge thereof. In *People* v. *Yokum*, 145 Cal. App.2d 245 [302 P.2d 406], a homicide by shooting case, *exclusion by the trial court of such evidence was held to be*

prejudicial error. At page 260, the rule is thus stated: "Testimony that decedent had made prior threats against defendant is admissible if there is evidence tending to show any act of aggression committed by decedent at the time of the homicide indicating that he intended to attack defendant."

In that case the appellate court determined that testimonial evidence that immediately prior to the shooting the decedent made a sudden lurch or dive toward the defendant, constituted a sufficient preliminary showing of aggression. In our case there is no evidence that plaintiff lurched, dived or advanced toward defendant.

*People* v. *Soules*, 41 Cal.App.2d 298 [106 P.2d 639], is another homicide case. Exclusion of evidence of prior specific acts of violence was held proper on the basis that no sufficient foundation was laid by a preliminary showing of good faith as a reasonable person in believing it was necessary to kill to protect against great bodily harm.

In *People* v. *Gonzales*, 33 Cal.App. 340 [164 P. 1131], a homicide, evidence of prior misconduct of, and prior threats made by, the deceased was stricken, the court stating at page 342: "When this evidence was tendered there was no testimony whatsoever tending to show any act of aggression committed by deceased at the time of the homicide indicating that he intended to attack defendant."

Nor do the California cases cited by defendant warrant a different rule or different exception to the rule. In *People* v. *Jones*, 136 Cal.App.2d 175 [288 P.2d 544], a homicide by shooting case, it was held that the trial court erred in excluding defendant's proffered testimony that on prior occasions the decedent told him she had once served a term in prison for assault with a deadly weapon. However, the court had before it evidence of events which occurred at the time of and leading up to the homicide including a bitter quarrel, threats to kill then made by the decedent who took a gun from a bureau drawer and advanced to the defendant with it. Although the California rule is not specifically mentioned by the court, the record in that case apparently disclosed abundant evidence of overt and hostile acts on the part of the decedent directed toward the defendant, constituting a prima facie case of self-defense.

It was within the discretion of the trial court to determine from all the evidence before it whether a prima facie showing of defense of self or property was made by defendant sufficient to warrant reception of evidence of

plaintiff's conduct on the previous evening. (*People* v. *Soules, supra,* 41 Cal.App.2d 298, 307; *Alvarado* v. *Anderson,* 175 Cal.App.2d 166, 179 [346 P.2d 73]; 2 Wigmore, Evidence (3d ed.) § 246, pp. 51, 52.)

In *People* v. *Carnavacci,* 119 Cal.App.2d 14, at page 17 [258 P.2d 1127], the rule is stated thus: "Furthermore, whether a sufficient foundation had been laid to warrant the admission of such testimony is a matter committed to the sound judgment of the trial court, whose ruling will not be disturbed on appeal in the absence of a showing of an abuse of discretion."

We are thus brought to the question of whether defendant adduced sufficient evidence to lay a foundation for the admission of his proffered testimony since, if so, it was an abuse of discretion to exclude it.

Again turning to the record, it appears that plaintiff had not consumed alcohol prior to his arrival at the motel bar. Mr. Schwabenland, the bartender, testified that at the bar plaintiff consumed 10 to 12 drinks containing alcohol, became under the influence of alcohol, became overly friendly, interrupted conversations of other patrons, was "reaching the stage" of becoming obnoxious but "wasn't too obnoxious," and his drinks were "cut off." Viewed in the light most favorable to defendant, this testimony establishes only that plaintiff was possessed of extroversive qualities and became intoxicated, but it falls far short of showing that he was a bellicose, dangerous, fighting man. Further, defendant was not present during this period.

There was testimony that after defendant returned and shook the shoulder of the apparently peacefully sleeping plaintiff to awaken him, plaintiff rose rapidly to his feet. Here the testimony is in conflict. Plaintiff testified that someone shook him, told him the cab was waiting and asked if he needed help, to which he replied that he could make it out by himself. Defendant testified that plaintiff rose violently or with more physical force than is normal to get up out of a chair; that he moved his arms and shoulders, and that it was his recollection that plaintiff took a "half swing" at him.

Mr. Sparks, the cab driver, testified that plaintiff "woke up and came out with swinging arms, actually took a swing at the gentleman, the owner or manager. From what I could see, I don't know if it was on purpose or on waking up suddenly."

However, Mr. Schwabenland, who was within reach of plaintiff and defendant, testified that plaintiff arose in a startled manner with his hands raised, but that he did not "take a swing at Mr. Tomerlin."

Mrs. Thompson, the cocktail waitress, testified that she was approximately 15 feet away but was watching; that plaintiff "jumped up hurriedly"; that no blows were struck and no blows were attempted.

Mr. Lee, a patron, watched the occurrence from a distance of 7 to 8 feet. He testified that although plaintiff shook his elbows and shoulders, the witness did not see any blows or any "swinging."

While this testimony, summed up, may tend to establish that plaintiff reacted in a startled manner when aroused from sleep, it does not suffice as evidence of aggressive conduct sufficient to necessitate self-defense.

The record then discloses that plaintiff and defendant shook hands three or four times; plaintiff started to leave, and defendant turned away and sat down at the bar. Defendant testified that at this time he had no apprehension of a physical attack.

Plaintiff then slammed the door, admittedly with considerable force, and continued on his way to the waiting cab. Defendant testified that he became very angry when he heard the noise made by the door, but there is no evidence that he was apprehensive of a physical attack or destruction of his property. Indeed, he could not have had a reasonable belief in an impending attack upon his person, since he ran after the plaintiff who was in the act of leaving the premises.

The third area of conduct which defendant contends established his apprehension of attack then occurred. Defendant shouted at plaintiff, and plaintiff stopped. Here, again, there is a conflict in the testimony. Plaintiff testified he stopped, turned to face defendant, then turned away and started to walk in the direction he had been traveling.

Defendant testified that plaintiff turned facing him with his hands raised and fists clenched, and "I continued to walk toward him. I wanted to get him off my property, and out of sight—sick and tired." When asked what he apprehended plaintiff might do, defendant answered, "Well, he had tried to destroy my property, or so it seemed to me, and I thought he might hit me." Mrs. Thompson testified that when plaintiff turned around, his right hand, doubled into a fist, was raised; that he walked backwards two or three steps facing

defendant, then half turned away from defendant, and at that point the defendant touched plaintiff. There was testimony from other witnesses to the effect that plaintiff turned, or half turned, away from defendant, and that defendant continued to advance toward plaintiff with his right arm upraised, but there is no evidence that plaintiff made a threatening gesture directed at, or that he advanced toward, defendant.

The picture drawn by the evidence does not depict defendant as an innocent person suddenly confronted with imminent danger of great bodily harm or destruction of his property at the hands of the plaintiff. On the contrary, it portrays an angry, rather than an apprehensive, defendant running after and injuring a retreating plaintiff. In running after plaintiff and pushing his shoulder defendant unquestionably acted intentionally.

Defendant's contention that the proffered evidence is admissible as part of the res gestae is without merit. It is argued that plaintiff spent two drunken evenings at the Motel Fresno bar and the events occurring during each are so interwoven in the mind of the defendant as to constitute an inseparable whole. The few authorities to which we have been referred do not aid defendant. *McAlvay* v. *Consumers' Salt Co.*, 112 Cal.App. 383 [297 P. 135], was an action to quiet title to stock. Certain extrajudicial conversations were held admissible as verbal acts or operative facts relevant and material to the issue of ownership of the stock. It has no application to the issue before us. Equally inapplicable are general statements contained in 121 American Law Reports 410; 20 American Jurisprudence, Evidence, section 667, page 558; and 32 Corpus Juris Secundum, Evidence, section 412, page 35, on which defendant relies. We believe the rule which excludes testimony such as was here offered unless a prima facie case of self-defense is first made out is more in accordance with justice than any rule which admits it. Unless the defendant can show a specific overt act of hostility or threat of violence on the part of an aggressor plaintiff tending to justify the actions of the defendant as defense of self or property, testimony of prior and collateral acts of misconduct of the plaintiff would serve no purpose other than to divert, rather than aid, the jury in determining the issue as to the reasonableness of apprehension of imminent harm or damage. A statement made in defendants' opening brief illustrates the wisdom underlying the rule of limitation. We are told that during both evenings plaintiff "had made himself so

obnoxious as to be not only unwelcome but even held in contempt.'' Had evidence tending to support that statement been admitted, the jurors could well have been misled into believing that plaintiff was a man who should be punished by being struck down, thus diverting them from the true issue of self-defense. ██ Self-defense may be resorted to in order to repel force, but not to punish.

We must conclude that the trial court did not abuse its discretion in finding that defendant had failed to establish a prima facie case of defense of self or property warranting the reception of evidence of prior acts or conduct of plaintiff. In view of this conclusion, we deem it unnecessary to consider the nature and sufficiency of defendant's offer of proof.

██ Defendant's second point for reversal is that it was error for the trial court to refuse to give defendant's requested instruction in the following language: ''A person who voluntarily consumes intoxicating liquor contributes directly to any injury caused thereby. It is the voluntary consumption of liquor, not the sale thereof, which the law regards as the promixate cause.''

In support of his contention defendant makes a dendritic argument. The first branch is to the effect that since considerable testimony was adduced tending to show that plaintiff was intoxicated, the jury could well have been left with the impression that defendant was responsible in some manner for that intoxication.

The instruction was drawn from language which appears in the case of *Cole* v. *Rush,* 45 Cal.2d 345, at page 356 [289 P.2d 450, 54 A.L.R.2d 1137]. However, in *Cole,* a wrongful death action, the question before the court was the claimed liability of a purveyor of intoxicants for furnishing liquor to the decedent who thereby became quarrelsome and engaged in combat with a third party, at whose hands he met his death. The conclusion of nonliability was predicated upon the common law rule, embodied in the prior decisional law of this state, that the furnishing of intoxicating liquor to a competent person does not cause liability for injuries or death to attach to the vendor, either on the theory of a direct wrong or on the theory of negligence. The principles stated in the instruction, correct when read in the context of the case in which they were born, are erroneous when applied to the facts of our case. In this case there was no cause of action which claimed a right of recovery by reason of plaintiff's intoxication. The cause

was pleaded and tried on the theory of assault and battery, an intentional tort.

The first sentence of the instruction would have erroneously told the jury that plaintiff's voluntary consumption of alcohol constituted contributory negligence. ██ Contributory negligence is not recognized as a defense to assault and battery (Prosser on Torts, § 51, p. 289) or, generally, to intentional torts (Rest., Torts, § 481, p. 1260) or against wilful misconduct (*Lovett* v. *Hitchcock*, 192 Cal.App.2d 806, 810 [14 Cal.Rptr. 117]).

In *Lowry* v. *Standard Oil Co.*, 63 Cal.App.2d 1 [146 P.2d 57], assault was charged in the pleadings and supported by the evidence. The giving of instructions which impliedly told the jury that negligence or lack of negligence on the part of the plaintiff was an issue for its determination was held to be reversible error. At page 6, the court said: ''These instructions would be appropriate in an action based upon negligence and are generally given in such actions. But they have no place in an action based upon a charge of assault.''

The second sentence would have told the jury that the voluntary consumption of alcohol, rather than the sale thereof, was the proximate cause of plaintiff's injuries. The record discloses only two references to the sale or serving of liquor. A question was propounded by plaintiff's counsel to Mr. Schwabenland, the bartender, ''Now, you know the law that you can't serve anyone who is intoxicated, can you?'' An objection thereto was sustained. In his closing argument, plaintiff's counsel pointed out that defendant sells liquor for profit, that plaintiff bought and consumed liquor, and that ''the courts have said a drunken man is just as much entitled to his rights under the law as a sober man, and often is far more in need of them.'' We cannot agree that these references are such as to place liability of defendant for selling alcohol in issue by virtue of the doctrine of theory of the case by trial, so as to entitle him to the instruction. Nor can we agree that the consumption of alcohol by plaintiff was the proximate cause of his injuries, when the evidence clearly shows that there was the intervention of a new agency, i.e., the act of defendant in shoving or pushing the plaintiff, causing him to fall. Under the circumstances, we must agree with the trial judge that the propositions of law set forth in the instruction are not here applicable.

The cases to which defendant refers us are not to the contrary. In *Thomas* v. *Buttress & McClellan, Inc.*, 141 Cal.App.

2d 812 [297 P.2d 768], an action to recover commissions on sales, an essential question in measuring compensation due plaintiff was whether the term ''sale'' embraced a certain service contract. Failure to instruct on the real questions to be solved by the jury, i.e., what constituted a sale within the meaning of the plaintiff's employment contract, the basis of his compensation and the manner of computation thereof, was held to be error (p. 818). In *Phillips* v. *G. L. Truman Excavation Co.*, 55 Cal.2d 801 [13 Cal.Rptr. 401, 362 P.2d 33], plaintiff sustained personal injuries when a truck struck a guardrail projecting from a scaffold on which he was standing, resulting in his voluntarily jumping through an open window. There was some evidence as to contributory negligence. It was, therefore, properly held to be prejudicial error to refuse to instruct on contributory negligence which deprived defendant of the basic theory of his defense.

In *Cooke* v. *Stevens,* 191 Cal.App.2d 457 [12 Cal.Rptr. 828], a wrongful death action, judgment for defendants in whose car plaintiff's intestate was riding as a guest, was affirmed. The complaint charged wilful misconduct and intoxication. The giving of an instruction on assumption of risk, restricted to the cause of action which claimed a right of recovery by reason of intoxication, was held proper. The defense had no application to the wilful misconduct cause of action.

*McAllister* v. *Cummings,* 191 Cal.App.2d 1 [12 Cal.Rptr. 418], is entirely different in its facts and is too remote to be comparable to our case or to justify discussion. *Mau* v. *Hollywood Commercial Bldgs., Inc.,* 194 Cal.App.2d 459 [15 Cal. Rptr. 181], was an action on a lease. The issue of the nature and sufficiency of a claimed tender of rentals was preserved in the pretrial conference order; evidence was adduced thereon, and failure to instruct the jury as to tender was properly held to be reversible error.

The second branch of defendant's argument is that the instruction is particularly important in this case for the reason that an innkeeper, and particularly an innkeeper who sells liquor, is under a duty to the public and to his patrons to maintain an orderly place, ejecting therefrom objectionable drinkers by force, if necessary. Neither expressly nor by fair implication does the language of the instruction relate to the language of the argument. If defendant desired special instructions on this point, he was under a duty to prepare and request them. (Code Civ. Proc., § 607a; *State Rubbish etc.*

*Assn.* v. *Siliznoff,* 38 Cal.2d 330, 340 [240 P.2d 282] ; *Perry* v. *City of San Diego,* 80 Cal.App.2d 166, 171-172 [181 P.2d 98].)
The trial court did not err in refusing to give the instruction. The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied September 26, 1962.